STATE OF NEBRASKA, APPELLEE,
V. DENNIS KRUTILEK, APPELLANT.

573 N.W. 2d 771

Filed February 20, 1998.   No. S-96-804.

Karen Falcone Givens for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

Dennis Krutilek was convicted for theft of movable property valued at over $1,500. Krutilek appealed his conviction, contending in part that the district court erred in denying his motions to dismiss a juror and to declare a mistrial because the

juror was acquainted with the victim. The Nebraska Court of Appeals affirmed the conviction, see *State v. Krutilek*, 5 Neb. App. 853, 567 N.W.2d 797 (1997), and we granted further review on the issue of whether the trial court abused its discretion in denying Krutilek's motions to remove the juror and to declare a mistrial. We affirm.

## BACKGROUND

Sometime during the night of September 16, 1995, a 1987 silver Chevrolet Celebrity owned by Karen Goswick, and driven primarily by her daughter, Julie Goswick (Goswick), disappeared from a bank parking lot near the Eagle's Club in Fremont, Nebraska. Goswick worked as a bartender at the Eagle's Club and had driven the car to work and parked it in the bank parking lot earlier that day. Later that evening, Goswick went outside to move the car and discovered that it was missing. After contacting her boyfriend and parents and asking them whether they had moved the car, Goswick reported the car as stolen.

On October 17, 1995, the car was found on property located outside of Fremont. The car had been stripped, and the engine was subsequently located at an automobile repair business. The owner of the business told the police that Krutilek had sold the engine to him on or about September 28, 1995.

Krutilek was arrested and charged with theft of movable property valued over $1,500. See Neb. Rev. Stat. § 28-511(1) (Reissue 1995). Theft of such property is a Class III felony. It was further alleged that Krutilek was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995).

During Krutilek's trial, Karen Goswick was called as a witness for the prosecution. Following her testimony, a juror brought to the attention of the court that he might be acquainted with Goswick. Outside the presence of the jury, the court examined the juror as follows:

> THE COURT: . . . I understand you may be acquainted with the last witness' daughter; is that correct?
>
> [Juror]: Yes. I am a member of the Eagle's Club and I know her from down there. I didn't know her last name.
>
> THE COURT: Now, other than that you know her, is this a close personal relationship or just a casual acquaintance?

[Juror]: Casual. We visit down there.

THE COURT: Is there anything about that that would make you less than a fair and impartial juror?

[Juror]: I can't say because —

THE COURT: Well —

[Juror]: We visited long enough, kind of friends.

THE COURT: Have you ever visited about this case?

[Juror]: No.

THE COURT: Well, I guess the answer is kind of up to you. All cases are difficult, you know. And all relationships are difficult. The question is: Ultimately is your mindset that you feel that you could be a fair and impartial juror both to Mr. Krutilek and to the State?

[Juror]: I would hate to say that our friendship would sway me.

THE COURT: And do you feel that you would do your best to set that aside?

[Juror]: I'll do my best.

In response to questions asked by Krutilek's attorney, the juror stated that he had known Goswick for over a year, that he also knew her from volunteer work he did at the Eagle's Club, and that he considered himself and Goswick to be friends. The juror also stated that he did not know Goswick's last name.

Krutilek moved to have the juror removed and moved for a mistrial. Both motions were overruled. The trial court ruled that the juror had indicated that he could set aside his friendship with Goswick and attempt to decide the case fairly and impartially. The trial court stated that the voir dire examination might have brought out the fact that the juror was acquainted with Goswick through a more complete identification of the victim and where she worked. Had that been the situation, the trial court further indicated that the juror would not have been disqualified by the court for cause. However, the record does not include the voir dire. After the defense motions were overruled, Goswick testified.

Krutilek's defense was that he had not stolen the car. Rather, Krutilek testified that Goswick had asked him to take the car in order to hide it from her ex-husband, that Goswick had given Krutilek a key to the car, and that she paid him to take the car.

Krutilek stated Goswick later told him to keep the car. Krutilek's girl friend testified that she saw Goswick give a car key to Krutilek and heard her ask him to take the car. Krutilek denied taking the engine out of the car, but admitted to selling the engine. However, another witness testified that she saw Krutilek remove the engine from the car.

Testimony from Goswick indicated that a tire on the car had been slashed the night before it turned up missing and that she believed her ex-husband might have been responsible. Goswick also testified that, to her knowledge, Krutilek was not aware of where the keys to the car had been kept. A police officer had previously testified there was a key in the ignition when he later found the stripped vehicle. However, Goswick also testified she did not give Krutilek a key to the car or give him permission to take the car. Karen Goswick received $2,825 in insurance money for the loss of the car which was used to buy another car for Goswick to use.

The jury convicted Krutilek, and he appealed, contending that the trial court abused its discretion in denying his motion to excuse the juror, in allowing evidence that Krutilek had prior automobile theft convictions, and in denying Krutilek's motion for a new trial. The Court of Appeals, in *State v. Krutilek*, 5 Neb. App. 853, 567 N.W.2d 797 (1997), held that the trial court did not abuse its discretion by denying Krutilek's motion to remove the juror. The Court of Appeals also affirmed the order of the trial court regarding the other assignments of error. We granted Krutilek's petition for further review and will review only the issue of whether the trial court abused its discretion in denying Krutilek's motions regarding the juror.

## ASSIGNMENTS OF ERROR

Krutilek assigns that the Court of Appeals erred in (1) determining that a juror was qualified as an impartial juror when that juror was a friend of the victim and stated he would "do [his] best" to decide the case on the evidence presented, (2) holding that the trial court did not abuse its discretion by denying Krutilek's motion to disqualify a juror who was acquainted with the victim, and (3) failing to reverse the judgment and remand the cause when there was evidence that Krutilek's constitutional right to a fair trial by an impartial jury was violated.

## STANDARD OF REVIEW

Retention or rejection of a juror is a matter of discretion with the trial court. *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987); *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984). Thus, the standard of review in a case involving a motion to dismiss a juror is whether the trial court abused its discretion.

A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997); *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997).

## ANALYSIS

Krutilek contends the trial court abused its discretion by not granting his motion to dismiss a juror who was "friends" with the victim, or in failing to declare a mistrial. Simply put, Krutilek's contention is that he was denied his constitutional right to a fair and impartial jury, and as a result, Krutilek argues that he is entitled to a new trial.

The 6th Amendment to the U.S. Constitution, applied to the states through the 14th Amendment, guarantees the right to a speedy and public trial by an impartial jury. The Nebraska Constitution also provides for such a right. Neb. Const. art. I, § 11. Where it appears to this court that the accused has not been afforded a fair trial, it is the duty of this court to grant a new trial. *State v. Robinson*, 198 Neb. 785, 255 N.W.2d 835 (1977).

However, the competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *State v. Coffman, supra.* A juror is not incompetent merely because he is an acquaintance of one of the witnesses. *Id.* A juror is not required to be excused from a jury and a mistrial not be declared when the juror is able to decide the case fairly and impartially. See *id.* However, the juror must be excused or a mistrial declared when a juror cannot be fair and impartial. See, *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995); *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979).

In *Coffman*, a juror realized after the start of testimony that he was acquainted with a witness in the case but had not recognized her married name. The juror indicated off the record that

his acquaintanceship with the witness would not influence his ability to be an impartial juror. No attempt was made by defense counsel in the case to produce evidence that the juror was prejudiced. Because the juror, albeit off the record, assured the trial court that he could be impartial, and because there was no evidence to the contrary, this court held that the trial court did not abuse its discretion in denying motions that the juror be excused and that a mistrial be declared.

In *State v. Clifford, supra,* a juror realized after the start of testimony that he was well acquainted with some of the defendant's family and knew facts about the defendant. The juror specifically told the trial court that he did not think he could be a fair and impartial juror, and the court declared a mistrial without prejudice. This court affirmed the declaration of a mistrial by the trial court.

This court's decision in *Coffman* illustrates the principle that where a juror who is acquainted with a witness states that he or she can remain impartial and decide the case on the evidence presented, that the juror need not be dismissed or a mistrial declared. Likewise, as with our decision in *Clifford,* when a juror states that he or she cannot be impartial, the defendant would be denied the right to a trial by an impartial jury if the juror were allowed to remain on the jury. However, the instant case presents a situation where the juror in question did not unequivocally state that he could or could not be impartial. Rather, the juror gave equivocal responses, indicating that he would "do [his] best" to be impartial. In addition, unlike the situations in *Coffman* and *Clifford,* the juror in the instant case not only knew a witness, the juror knew the victim who was also a witness, whose mother was a witness, and whose credibility was a key factor for the defense.

This court adheres to the rule that the retention or rejection of a juror is a matter of discretion with the trial court. *State v. Coffman,* 227 Neb. 149, 416 N.W.2d 243 (1987); *State v. LeBron,* 217 Neb. 452, 349 N.W.2d 918 (1984). This rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial. Compare *State v. Coffman, supra* (dealing with retention of juror after trial had

begun), and *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990) (dealing with retention of venireperson as juror). Thus, cases involving either the removal of a venireperson for cause or the retention of a juror after trial has begun are instructive to the instant case.

Most jurisdictions that apply an abuse of discretion standard of review defer to the decision of the trial court when either a juror or potential juror is equivocal in his or her ability to be impartial. See, *People v. Carrillo*, 946 P.2d 544 (Colo. App. 1997) (when none of jurors revealed unyielding belief that defendant was guilty or unwillingness to deliver verdict based on law and evidence, there was no clear abuse of discretion); *Brown v. State*, 913 S.W.2d 577 (Tex. Crim. App. 1996) (when venireperson vacillates or equivocates on his or her ability to follow law, reviewing court must defer to trial court's judgment); *Powell v. State*, 906 P.2d 765 (Okla. Crim. App. 1995) (finding no abuse of discretion when support is found in record for trial court's decision); *Lacy v. State*, 629 So. 2d 688 (Ala. Crim. App. 1993) (determination of whether juror can decide case fairly and impartially is within discretion of trial court); *State v. Bashor*, 188 Mont. 397, 614 P.2d 470 (1980) (when evidence relating to qualification of juror is in conflict, decision of trial court is final absent abuse of discretion).

The determination of whether or not a person can be an impartial juror is influenced by many factors. Thus, situations will arise where the trial court's impression of a juror is not reflected in the record. *Powell v. State, supra*. See *People v. Carrillo, supra*. A rule that requires a juror to be dismissed anytime he or she is equivocal in his or her ability to be impartial would essentially nullify any discretion of the trial court regarding the issue and would ignore the fact that there are more factors involved than simply the juror's statements. For example, a juror who states he will "do his best" to be impartial while vigorously nodding his head is likely to be viewed differently by the trial court than the juror who says he will "do his best" in a meek voice while avoiding eye contact with members of the court. The difference in behavior of such jurors will rarely be noted in the record, but will be readily apparent to the trial court.

Thus, keeping in mind that the competency of a juror is generally presumed and that the burden was on Krutilek to show that the juror in question could not act impartially, we cannot conclude that the trial court abused its discretion in the instant case. Nothing in the record indicates that the juror ever specifically stated that he could not be a fair and impartial juror. While the juror also never unequivocally stated that he would act fairly and impartially, he did state that his relationship with the victim was casual and that he would "do [his] best." The trial court was in the best position to observe the juror as he stated this and to judge from the juror's demeanor and the circumstances whether the juror could act in a fair and impartial manner. Absent something specific in the record that would indicate otherwise, we cannot conclude the trial court abused its discretion. Accordingly, we affirm.

AFFIRMED.