STATE OF NEBRASKA, APPELLEE, V.
VASILE HURBENCA, APPELLANT.
669 N.W.2d 668

Filed October 10, 2003.   No. S-02-1161.

James R. Mowbray and Nancy K. Peterson, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## I. NATURE OF CASE

Vasile Hurbenca pled guilty to a charge of attempted escape, and the district court for Lancaster County found him to be a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995). The court sentenced Hurbenca to 10 to 15 years' imprisonment to be served consecutively to any sentence he was currently serving and ordered that he serve a mandatory term of 10 years. Hurbenca appeals.

## II. SCOPE OF REVIEW

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

■ Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Segura*, 265 Neb. 903, 660 N.W.2d 512 (2003).

## III. FACTS

Hurbenca was charged by amended information with attempted escape and with being a habitual criminal. At the plea hearing, the State provided a factual basis which established that Hurbenca was an inmate of the Nebraska Department of Correctional Services at the Nebraska State Penitentiary when on the morning of April 25, 2001, he and three other inmates entered the prison chapel, where they taped and bound several inmates, prison employees, and a volunteer. Hurbenca and his cohorts then drove an all-terrain vehicle to the inner fence of the penitentiary and attempted to escape by climbing over the fences surrounding the penitentiary.

Hurbenca entered a plea of guilty to the charge of attempted escape, which was accepted by the district court. Hurbenca filed a motion to quash the amended information as it pertained to his habitual criminal status and requested that the court find § 29-2221 to be unconstitutional. The court subsequently overruled Hurbenca's motion to quash and found him to be a habitual criminal. The court sentenced Hurbenca to 10 to 15 years' imprisonment to be served consecutively to any sentence he was currently serving and ordered that he serve a mandatory term of 10 years.

Hurbenca timely filed this appeal, and we granted his petition to bypass the Nebraska Court of Appeals.

## IV. ASSIGNMENTS OF ERROR

Hurbenca assigns, restated, that the district court (1) erred in overruling his motion to quash for the reason that § 29-2221 is unconstitutional because it (a) increases the potential punishment without providing for a finding of fact by a jury, (b) fails to require the prosecution to prove habitual criminality beyond a reasonable doubt, and (c) violates the Eighth Amendment prohibition against cruel and unusual punishment; (2) abused its discretion by imposing an excessive sentence; and (3) erred in admitting exhibits 2 through 6 and subsequently finding Hurbenca to be a habitual criminal.

## V. ANALYSIS

### 1. MOTION TO QUASH

#### (a) Increase in Potential Punishment
#### Without Finding of Fact by Jury

Hurbenca first argues that § 29-2221 violates his 6th Amendment right to a trial by jury, his rights under the Due Process Clause contained in the 14th Amendment to the U.S. Constitution, and his rights under article I, § 6, of the Nebraska Constitution. He claims that § 29-2221 is unconstitutional because it does not grant him the right to a jury trial to determine the existence of facts which authorize an increase in his punishment beyond that which is statutorily authorized for attempted escape, a Class IV felony. He asserts that because § 29-2221 authorized an increase in his sentence beyond the 5-year maximum for a Class IV felony without requiring a finding of fact by a jury, the statute is unconstitutional as it applies to him.

Thus, the issue before us is whether a jury must determine the fact of prior convictions for purposes of sentence enhancement under Nebraska's habitual criminal statute, § 29-2221. Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

Section 29-2221(1) provides:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . .

Hurbenca relies upon *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002); and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.

Ed. 2d 435 (2000), to support his position that any factor which could result in the increase of a sentence beyond the maximum allowed by statute is actually an element of the crime and must be decided by a jury. In support of his argument, Hurbenca notes the following excerpt from *Harris*:

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding.

536 U.S. at 557. Hurbenca asserts that because § 29-2221 does not allow a jury to determine the issue of whether a defendant has prior criminal convictions, it is unconstitutional. For this reason, Hurbenca claims that his motion to quash was erroneously overruled and that the district court's finding that he is a habitual criminal was in error.

In *Apprendi, supra*, the defendant was convicted pursuant to a guilty plea of possession of a firearm for an unlawful purpose and unlawful possession of a prohibited weapon. He was sentenced to an extended term under New Jersey's "hate crime statute." Both the Superior Court and the New Jersey Supreme Court affirmed. Upon certiorari, the U.S. Supreme Court reversed, and remanded, finding that the state hate crime statute violated the Due Process Clause. The hate crime statute authorized an increase in maximum prison sentence based on a judge's finding by a preponderance of the evidence that the defendant acted with purpose to intimidate the victim based on the particular circumstances of the victim violated. However, the Court stated:

> In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones* [*v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), quoting *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (Stevens, J., concurring).

The Court set forth the rationale for treating prior convictions differently than elements of the offense when it noted in *Apprendi* that

recidivism "does not relate to the commission of the offense" itself . . . . [T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

530 U.S. at 496.

*Apprendi* considered the determination of a prior conviction to be a narrow exception to the general rule that it is unconstitutional for a legislature to remove from a jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. In *U.S. v. Henderson*, 320 F.3d 92, 110 (1st Cir. 2003), *cert. denied* 539 U.S. 936, 123 S. Ct. 2597, 156 L. Ed. 2d 620, the Court of Appeals stated:

We have consistently observed with a "regularity bordering on the monotonous," that *Apprendi* does not apply to sentencing enhancements based on prior convictions. *United States v. Moore*, 286 F.3d 47, 50 (1st Cir.2002); *see also United States v. Bradshaw*, 281 F.3d 278, 294 (1st Cir.2002); *United States v. Gomez-Estrada*, 273 F.3d 400, 402 (1st Cir.2001).

Nebraska's recently amended capital sentencing scheme requires a jury to determine aggravating circumstances when the death penalty is sought. See 2002 Neb. Laws, 3d Special Sess.,

L.B. 1. In *State v. Gales*, 265 Neb. 598, 624, 658 N.W.2d 604, 624 (2003), we stated: "[T]he existence of any aggravating circumstance utilized in the imposition of [a] sentence of death, other than a prior criminal conviction, must be determined by a jury." We also indicated in *Gales* that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), did not alter *Apprendi, supra,* or *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), on the issue of jury determination of prior convictions.

■ Based on the foregoing, we conclude that the determination of whether a defendant has prior convictions that may increase the penalty for a crime beyond the prescribed statutory maximum is not a determination that must be made by a jury. Thus, Hurbenca's argument that § 29-2221 is unconstitutional because it increased his punishment without providing for a finding of fact by a jury is without merit.

(b) Burden of Proof

Hurbenca next argues that § 29-2221 is unconstitutional because it fails to require the prosecution to prove habitual criminality beyond a reasonable doubt. He asserts that because § 29-2221 and Neb. Rev. Stat. § 29-2222 (Reissue 1995) do not specify the applicable standard which the district court should have utilized in determining whether the prosecution had satisfied its burden of proving his prior convictions, the statutes violate his due process rights under the 14th Amendment. Hurbenca also claims Nebraska law violates *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), in which the U.S. Supreme Court explicitly held: "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

In *State v. Orduna*, 250 Neb. 602, 610, 550 N.W.2d 356, 362 (1996), we addressed the State's burden of proof during enhancement proceedings:

> In a proceeding for an enhanced penalty, the state has the burden to show that the record of a defendant's prior conviction, based on a plea of guilty, affirmatively demonstrates that the defendant was represented by counsel, or

that the defendant, having been informed of the right to counsel, voluntarily, intelligently, and knowingly waived that right. . . . Moreover, a checklist docket entry is sufficient to establish that a defendant has been advised of his rights and has waived them.

(Citations omitted.) The record here shows that Hurbenca was represented by counsel for each of his prior convictions. He does not claim that any of his convictions were uncounseled, and the validity of the convictions on that basis is not before us.

In *U.S. v. Williams*, 308 F.3d 833 (8th Cir. 2002), the defendant was found guilty by a jury of interfering with commerce by violence. The trial court sentenced the defendant to life in prison pursuant to the federal "three-strikes law" because he had five prior convictions for robbing cabdrivers. On appeal, the defendant argued, among other issues, that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the government was required to prove to a jury beyond a reasonable doubt that he had prior convictions for serious felonies before the three-strikes enhancement could be applied. The U.S. Court of Appeals for the Eighth Circuit concluded:

> *United States v. Davis*, 260 F.3d 965, 968-70 (8th Cir.2001), is controlling. *Davis* held that under *Apprendi* and *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), it is "proper for the district court to make the finding according to a preponderance of the evidence that appellant had two prior convictions for serious violent felonies." [*Davis*, 260 F.3d] at 969. We therefore reject [the defendant's] argument that the government must prove beyond a reasonable doubt that he had been convicted of prior serious felonies.

*Williams*, 308 F.3d at 839-40.

We adopt the following holdings from *Williams*: (1) The State has the burden to prove the fact of prior convictions by a preponderance of the evidence, and (2) the trial court determines the fact of prior convictions based upon the preponderance of the evidence standard. Thus, the narrow exception set forth in *Apprendi* remains the applicable law. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt." See *Apprendi*, 530 U.S. at 490.

We conclude that neither the state nor the federal Constitution requires the State to prove the fact of prior convictions beyond a reasonable doubt for purposes of sentence enhancement under § 29-2221. Hurbenca's assignment of error on this issue is without merit.

### (c) Cruel and Unusual Punishment

Hurbenca next argues that § 29-2221, as it applies to him, violates the Eighth Amendment prohibition against cruel and unusual punishment. He asserts that the application of § 29-2221 in his case resulted in a sentence that was "grossly disproportionate" to the crime of which he was convicted. See brief for appellant at 26. Hurbenca complains that he will be required to serve 10 years before becoming eligible for parole.

Hurbenca notes a number of problems with § 29-2221: It does not prohibit the use of convictions regardless of the age of the convictions, it does not differentiate between prior violent and nonviolent offenses, it does not allow the trial court to consider the age at which the offender was incarcerated or the positive accomplishments that have marked the offender's attempts at rehabilitation, it does not allow the court to consider whether a sentence would inflict undue hardship on the offender's family or whether attempts at restitution were made by the offender, and it does not permit the sentencing court to consider the facts of the substantive offense for which the defendant stands to be sentenced or any cooperation provided by the defendant.

The State argues that Hurbenca's sentence is not disproportionate to the number of offenses he has committed. It argues that the sentence he received was at the low end of the habitual criminal range, which allows for a maximum sentence of 60 years. See § 29-2221(1). The State also argues that the gravity of the offense should be considered and that attempting to escape from prison is a serious offense, particularly under these circumstances where inmates, prison employees, and a volunteer were taped and bound to facilitate the escape.

In addition, the State argues that the enhanced punishment imposed for Hurbenca's most recent offense should not be viewed

as an additional penalty for his earlier crimes, but, rather, should be viewed as a greater penalty for the most recent offense, which is considered to be an aggravated offense as a result of Hurbenca's prior convictions.

Again we are presented with a question of law and are, therefore, obligated to reach a conclusion independent of the decision reached by the court below. See *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). Thus, we must review Hurbenca's criminal record.

In 1984, Hurbenca was convicted of possession of a forged certificate of title and theft by receiving stolen property, and he was sentenced to 18 months to 2 years in prison. In 1986, he was convicted of theft by receiving stolen property and attempting to procure fraudulent title, and he was sentenced to consecutive terms of 6 to 20 years' and 4 years' imprisonment. In 1987, he was convicted of attempted escape and sentenced to 1 year in prison. In 1991, Hurbenca was convicted of fraudulent application for a motor vehicle title and was sentenced to 19 months' to 5 years' imprisonment. In 1996, he was convicted of possession of a firearm by a felon, and he was sentenced as a habitual criminal to 10 to 15 years in prison. Hurbenca was serving this sentence when he was convicted of attempted escape in the case before us.

■ "[W]ith reference to cruel and unusual punishment, the Nebraska Constitution does not require more than does the [Eighth Amendment to the] U.S. Constitution." *State v. Moore*, 256 Neb. 553, 566, 591 N.W.2d 86, 95 (1999), *cert. denied*, *Knight v. Florida*, 528 U.S. 990, 120 S. Ct. 459, 145 L. Ed. 2d 370. Section 29-2221 has withstood Eighth Amendment cruel and unusual punishment challenges in decisions of both the U.S. Court of Appeals for the Eighth Circuit and this court. See, *Fowler v. Parratt*, 682 F.2d 746 (8th Cir. 1982); *State v. Goodloe*, 197 Neb. 632, 250 N.W.2d 606 (1977), *disapproved on other grounds*, *State v. Clifford*, 204 Neb. 41, 281 N.W.2d 223 (1979); *State v. Graham*, 192 Neb. 196, 219 N.W.2d 723 (1974).

In *Fowler, supra*, the defendant was convicted of embezzling approximately $433 and was sentenced as a habitual criminal to 10 to 15 years in prison. The defendant had previously been convicted of issuing an insufficient funds check in the amount of $40 and possession of a forged instrument in the amount of

$100. The defendant challenged his 10- to 15-year habitual criminal sentence as being violative of the Eighth Amendment protection against cruel and unusual punishment because it was disproportionate to the severity of the crimes involved. The Eighth Circuit affirmed the sentence as not in violation of the Eighth Amendment.

Section 29-2221 has been amended since *Fowler*. Prior to its amendment in 1995, § 29-2221 (Cum. Supp. 1994) provided that the sentence imposed on a habitual criminal was to be a "term of not less than ten nor more than sixty years." As amended by 1995 Neb. Laws, L.B. 371, § 29-2221(1) (Reissue 1995) provides that a habitual criminal "shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years." L.B. 371 became operative on September 9, 1995, and is applicable to Hurbenca's case.

The U.S. Supreme Court recently addressed whether the Eighth Amendment prohibits the State of California from sentencing a repeat felon to a prison term of 25 years to life under the state's " 'Three Strikes and You're Out' " law. See *Ewing v. California*, 538 U.S. 11, 14, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003). Pursuant to California law, if a defendant has one prior " 'serious' " or " 'violent' " felony conviction, he or she must be sentenced to " 'twice the term otherwise provided as punishment for the current felony conviction.' " 538 U.S. at 16. If the defendant has two or more prior " 'serious' " or " 'violent' " felony convictions, he or she must receive " 'an indeterminate term of life imprisonment.' " *Id*. If a defendant is sentenced to life under the California three-strikes law, he or she "become[s] eligible for parole on a date calculated by reference to a 'minimum term,' which is the greater of (a) three times the term otherwise provided for the current conviction, (b) 25 years, or (c) the term determined by the court . . . for the underlying conviction, including any enhancements." *Id*.

Gary Ewing was on parole from a 9-year prison term when he walked out of a shop with three golf clubs, priced at $399 each, concealed in his pants. He was convicted of one count of felony grand theft of personal property in excess of $400. Ewing had previously been convicted of, among other crimes, three burglaries and a robbery. The trial court sentenced Ewing to 25 years to

life in prison under the three-strikes law as a newly convicted felon with two or more "serious" or "violent" felony convictions in his past. The California Court of Appeal affirmed, and the Supreme Court of California denied Ewing's petition for review. The U.S. Supreme Court subsequently granted certiorari.

In analyzing whether Ewing's sentence of 25 years to life in prison was unconstitutionally disproportionate to his offense, the Court stated:

> In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the "triggering" offense: "[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." . . .
>
> Ewing's sentence is justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record.

*Ewing*, 538 U.S. at 29-30. The Court held that Ewing's sentence of 25 years to life in prison under the three-strikes law was not grossly disproportionate and therefore did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

We conclude that Hurbenca's sentence is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Hurbenca's assignment of error concerning cruel and unusual punishment is without merit.

## 2. Excessive Sentence

Hurbenca argues that the district court abused its discretion by imposing an excessive sentence. He asserts that the only fair and just sentence would be a lesser term of imprisonment. While he acknowledges that his offense calls for some degree

of incarceration, he argues that the "extremely lengthy" sentence is inappropriate for a "relatively minor" offense. See brief for appellant at 31. He asserts the district court ignored the realities of his sentence and abused its discretion by ordering the sentence to be served consecutively to the sentence he was currently serving. He specifically requests this court to resentence him to 10 years' imprisonment to be served concurrently.

Attempted escape is a Class IV felony carrying a maximum 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. §§ 28-105 and 28-201 (Cum. Supp. 2002) and 28-912 (Reissue 1995). Since Hurbenca was found to be a habitual criminal, under § 29-2221, the district court was required to sentence him to a minimum of 10 years in prison and a maximum of 60 years in prison.

Hurbenca's sentence for attempted escape as a habitual criminal was within the statutory limits. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Segura*, 265 Neb. 903, 660 N.W.2d 512 (2003). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

We conclude that Hurbenca's sentence does not demonstrate that the district court abused its discretion. Therefore, this assignment of error has no merit.

### 3. EXHIBITS 2 THROUGH 6

Hurbenca argues that the district court erred in admitting exhibits 2 through 6 at his sentencing and enhancement hearing and in finding him to be a habitual criminal. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Lotter, ante* p. 245, 664 N.W.2d 892 (2003).

Specifically, Hurbenca argues that exhibit 2 did not contain a signed judgment, as required by Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2002). He claims that exhibit 3 did not contain a valid certification and therefore did not comport with § 29-2222, which

requires a duly authenticated copy of the former judgment. He also claims that exhibit 3 did not contain the judge's signature, which rendered it deficient under § 25-1301. Hurbenca argues that exhibits 4 through 6 did not contain an order of commitment, as required by § 29-2222, nor a judge's signature, as required by § 25-1301. We will address each exhibit individually.

We initially point out that § 29-2221 requires two prior felony convictions for a finding of habitual criminality. Section 29-2221(1) provides: "Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal . . . ." Section 29-2222 provides:

> At the hearing of any person charged with being an habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

In *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987), we recognized that § 29-2222 does not confine proof of the defendant's prior convictions to the document specifically mentioned. See, also, *State v. Bundy*, 181 Neb. 160, 147 N.W.2d 500 (1966), *cert. denied* 389 U.S. 871, 88 S. Ct. 152, 19 L. Ed. 2d 150 (1967).

In *Bundy*, the State offered authenticated copies of two prior judgments. Instead of the actual commitment papers, the State offered certified copies of the sheriff's return and the warden's receipt, which evidenced the defendant's commitment to the Nebraska Penal and Correctional Complex. Despite the defendant's argument that § 29-2222 provided the exclusive method of proof, we held that the State was in substantial compliance with the requirement of proof of commitment. We stated that the purpose of § 29-2222 is to give competency and weight to the particular evidence mentioned. The fact that the statute indicates that an authenticated copy of a conviction is prima facie evidence is itself suggestive that other proof may also be received.

We also note that prior to its amendment in 1999, § 25-1301 (Reissue 1995) provided:

(1) A judgment is the final determination of the rights of the parties in an action.

(2) Rendition of a judgment is the act of the court, or a judge thereof, in pronouncing judgment, accompanied by the making of a notation on the trial docket, or one made at the direction of the court or judge thereof, of the relief granted or denied in an action.

(3) Entry of a judgment is the act of the clerk of the court in spreading the proceedings had and the relief granted or denied on the journal of the court.

The judgments reflected in exhibits 2 through 6 were rendered before the 1999 amendment to § 25-1301 and therefore were not subject to the requirement that a judgment must bear the signature of a judge.

Exhibit 2, received over Hurbenca's objection, contained an amended information filed January 5, 1984, charging Hurbenca with possession of a forged certificate of title and theft by receiving stolen property, a commitment signed by the deputy clerk indicating Hurbenca was sentenced for a period of imprisonment of 18 months to 2 years, and a sheriff's return indicating that Hurbenca was delivered to the Department of Correctional Services in March 1984. The exhibit also contained the judge's minutes indicating that Hurbenca was sentenced to 18 months' to 2 years' imprisonment.

Exhibit 3 contained an information filed September 28, 1987, charging Hurbenca with attempted escape, a commitment signed by the deputy clerk indicating he was sentenced to a period of 1 year's imprisonment, and a sheriff's return indicating that Hurbenca was delivered to a representative of the Department of Correctional Services. The exhibit also contained the judge's minutes indicating Hurbenca's 1-year sentence.

Exhibit 4 contained an information filed July 11, 1986, charging Hurbenca with theft by receiving stolen property and attempting to procure fraudulent title. The exhibit also contained a "Judgment and Sentence" indicating that Hurbenca was sentenced to 6 to 20 years' imprisonment and that commitment was ordered accordingly. Hurbenca's sentence was further evidenced

by a copy of the judge's minutes. The exhibit established that Hurbenca was delivered to the Nebraska Penal and Correctional Complex in September 1986.

Exhibit 5 contained an information filed May 8, 1991, charging Hurbenca with false application for a motor vehicle title, a "Judgment and Sentence," and the judge's minutes, which indicate that Hurbenca was sentenced to 19 months to 5 years in prison and that commitment was ordered accordingly. The exhibit shows that Hurbenca was delivered to the Nebraska Penal and Correctional Complex in December 1991.

Exhibit 6 contained an amended information filed September 8, 1995, charging Hurbenca with possession of a firearm by a felon and asserting habitual criminal status, as well as a "Judgment and Sentence" indicating that Hurbenca was sentenced to a period of 10 to 15 years' imprisonment and that commitment was ordered accordingly. The exhibit contains the judge's minutes, which reflect Hurbenca's sentence and show that he was delivered to the Nebraska Penal and Correctional Complex in March 1996.

Exhibits 2 through 6 each include a statement of authentication signed by a clerk of the district court and a district court judge.

Proof of Hurbenca's prior convictions is not confined to the requirements of § 29-2222. See, *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987); *State v. Bundy*, 181 Neb. 160, 147 N.W.2d 500 (1966), *cert. denied* 389 U.S. 871, 88 S. Ct. 152, 19 L. Ed. 2d 150 (1967). We conclude that exhibits 2 through 6 were properly received as evidence of Hurbenca's prior convictions. These exhibits sufficiently prove that Hurbenca had twice been convicted of a crime, sentenced, and committed to prison in this state for terms of not less than 1 year. Therefore, the district court did not err in finding Hurbenca to be a habitual criminal under § 29-2221.

## VI. CONCLUSION

For the reasons set forth herein, the judgment of the district court is affirmed.

AFFIRMED.